UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BRAD PACKER, derivatively on behalf of
1-800-FLOWERS.COM, INC.,

**MEMORANDUM OF
DECISION & ORDER**

Plaintiff,

15-CV-5933 (GRB)

-against-

RAGING CAPITAL MANAGEMENT, LLC,
RAGING CAPITAL MASTER FUND, LTD,
WILLIAM C. MARTIN and
1-800-FLOWERS.COM, INC.,

Defendants.
------------------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

Pending before the Court in this shareholder derivative action seeking recovery of short swing profits are cross-motions for summary judgment brought by plaintiff Brad Packer, derivatively on behalf of 1-800-Flowers.com, Inc. ("Flowers"), and defendants Raging Capital Management, LLC, ("RCM"), Raging Capital Master Fund, Ltd. ("Master Fund"), and William C. Martin (together the "Raging Capital defendants"). Because, as discussed herein, defendant Master Fund, which is entitled to none of the exemptions to the short swing profit rules, held beneficial ownership of in excess of ten percent of the outstanding shares of Flowers, plaintiff's motion for summary judgment is hereby GRANTED.[1]

## BACKGROUND

In March 2017, this Court issued a Memorandum and Order denying defendants' motions

---

[1] While plaintiff moved solely for summary judgment as to Master Fund, the parties agreed at oral argument that, as defendants all held interests in essentially the same shares, judgment against Master Fund alone would be coextensive with judgment against all defendants.

to dismiss and for summary judgment, familiarity with which is assumed and is hereby incorporated by reference. *See Packer v. Raging Capital Mgmt., LLC,* 242 F. Supp. 3d 141, 143 (E.D.N.Y. 2017) ("*Flowers I*"). The motion practice surrounding that Memorandum defined several issues that remained to be explored during discovery, including "purchases and sales made by Defendants in Flowers equity securities during the period April 30, 2014 to January 31, 2015." *See*, *e.g.*, DE 34-7 at ¶ 8(e) (declaration filed pursuant to Fed. R. Civ. P. 56(d)). The parties completed discovery prior to the filing of the instant motions.

Discovery seems to have proved fruitful as the parties have presented information previously unrevealed to this Court. Most importantly, Master Fund, an entity which qualifies neither as a Registered Investment Advisor ("RIA") nor a control person, held more than ten percent of the outstanding shares of Flowers. *See* DE 54-4 (Flowers Schedule 13-G dated April 30, 2014, reporting "shared" beneficial ownership, voting power and dispositive power over 10.3% of Flowers shares); DE 54-5 (Flowers Schedule 13-G dated June 30, 2014, reporting 15.6% shared ownership); DE 54-6 (Flowers Schedule 13-G dated December 31, 2014, reporting 11.1% shared ownership); DE 54-7 (Flowers Schedule 13-G dated January 31, 2015, reporting 10.5% shared ownership). This fact substantially simplifies the issues before the Court and, for the reasons discussed herein, summary judgment is warranted as to plaintiff's claims against Master Fund. Furthermore, because the parties agree that the damages as against Master Fund are coextensive with those that could potentially be recovered against the codefendants, this conclusion effectively resolves this action.

## **STANDARD OF REVIEW**

These motions for summary judgment are considered under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd*

*Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.[2]

## DISCUSSION

As noted in *Flowers I*, much of the litigation focused on whether the defendants, considered together, constituted "a group for purposes of determining beneficial ownership under §§ 13(d)(3) and 16(b) of the Exchange Act," meaning that "the shares held by persons in such a group are aggregated to determine whether the group has a greater than 10% beneficial ownership in the issuing corporation." *Flowers I*, 242 F. Supp. 3d at 144. On this motion, however, the parties do not dispute that Master Fund held, on its own, in excess of 10% of the shares, so the question of aggregation no longer need be considered. *See* DE 51-1 at 12, n. 4 (noting "no holdings need to be aggregated because it is undisputed that there was a single block of shares in the name of [sic] single shareholder that alone exceeded 10%"); DE 61 at 7 ("Master Fund . . . had legal title to in excess of 10%"). And while the parties spilled much ink arguing whether the interrelationships between Martin (the "control person"), RCM (the registered investment advisor) and Master Fund vitiate the exemptions claimed by Martin and RCM under 17 C.F.R. §240.16(a)(1)(v) and (vii), those questions no longer need be resolved here.

Defendants, however, now adopt a more nuanced argument. Defendants contend, in sum and substance, that because Martin, RCM and Master Fund held ownership interests in the very same shares, the exemptions enjoyed by Martin and RCM effectively immunize those shares from short swing profit liability. This concept is predicated upon an exegesis of certain language from the district court decision in *Egghead*, to wit:

---

[2] At oral argument, counsel for defendants conceded that the standing argument made in this case is inconsistent with existing Second Circuit law, effectively withdrawing that argument. DE 61 at 18–19.

> **[S]hares held by an exempt person or institution are themselves exempt from Section 16.** As explained by the district court, "Rule 16a-1(a)(1) clearly expresses an intent to exclude certain institutions and persons *as well as a particular class of securities held by them* from counting towards the ten percent holder threshold." *Brookhaven*, 113 F. Supp. 2d at 624; *see also id*. at 618 ("[O]nly certain securities ….qualify to be counted towards the ten percent threshold. Others are exempt."); *id*. at 626 (Rule 16a-1(a)(1) creates an "exemption for certain securities").

DE 55 at 13–14 (emphases as in brief, though not in court decision). Despite defendants' attempt to garb this concept in Second Circuit authority, nothing in the Second Circuit decision supports the notion that shares held by non-exempt entities are somehow subject to exemption under Rule 16a-1 if held jointly with an exempt entity. In *Egghead*, the Second Circuit reached a conclusion that could well be described as the contrapositive of the proposition posited by defendants: that an exempt entity is not the beneficial owner of shares that it holds on behalf of its customers. *Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co*., 340 F.3d 79, 85 (2d Cir. 2003) ("Investment Advisers are deemed not to be the beneficial owners of those shares for purposes of § 16(b), and because the defendant group's liability depends on counting those shares as beneficially owned by the Investment Advisers so as to bring the group's ownership above 10%, the defendants are not liable"). In other words, *Egghead* holds that Martin and RCM, as exempt entities, are not beneficial owners for Section 16(b) purposes of the shares held on behalf of Master Fund; nothing in the decision would support the notion that Master Fund somehow derives the benefit of the exemptions enjoyed by its co-defendants.

Finding no language supporting their argument in the Second Circuit decision in *Egghead,* defendants attempt to draw authority from an overly narrow construction of the lower court decision. However, a fuller reading of the decision by Judge Marrero does not support the share-immunization argument formulated by defendants. As Judge Marrero explained:

> This regulatory framework suggests a two-tier inquiry for determining beneficial ownership and the related ten percent holder status. The first step relates to the ownership "person" for Section 13(d) purposes, and seeks to settle whether or not

the person or institution is one eligible to claim any of the ten exemptions enumerated in Rule 16a–1(a)(1). The second step pertains to the securities in question and the circumstances under which they were acquired and held. If these tests satisfy the concerns that underlie the insider trading restrictions of the Act and Rules, the shares at issue should not count toward the ten percent holder limitation applicable to the person or institution involved. Under these circumstances, as the SEC acknowledged, an eligible institution could aggregate, in the ordinary course of business in customer and fiduciary accounts, shares of a particular issuer exceeding the ten percent bound that, but for the Rule 16a–1(a)(1) exemption, could subject the institution to liability under Section 16(b).

*Rosen v. Brookhaven Capital Mgmt. Co.*, 113 F. Supp. 2d 615, 622–23 (S.D.N.Y. 2000). Thus, in applying this two-tier inquiry here, Master Fund fails at the first step: it is not eligible to claim an exemption under Rule 16a-1(a)(1).

Despite defendants' suggestions to the contrary, Master Fund clearly is a beneficial owner of the shares for the purposes of this analysis. Put another way, through their "inoculation" theory, defendants seek impute to every member of a group the exemptions that could be claimed by any members of that group. But the group exemption contained in Rule 16a-1(a)(1)(xi) only applies, by its own terms, where "all members" of the group are exempt under subsections (i) through (x). *Brookhaven*, 113 F. Supp. 2d at 628 (the "'group' exception [is] available under subsection (x) when all the members of the group similarly qualify for exemption under Rule 16a–1(a)(1)(i) through (x)"). Here, by contrast, where it is undisputed that Master Fund did not qualify for an exemption, and Master Fund held more than 10% of the outstanding shares, the group analysis is simply inapplicable. There is no authority supporting the notion that an investor can derivatively benefit from the exemption enjoyed by its registered investment advisor.[3]

Defendants further argue that Master Fund cannot be defined as a beneficial owner of the

---

[3] And, indeed, if defendants' analysis were to hold, this notion could effectively abrogate the short swing profits rule. A single investor holding in excess of 10% of a publicly traded company could take advantage of insider status while being immunized from short swing profit liability simply by effecting trades through a registered investment advisor.

5

Flowers shares because, as the result of an "investment management agreement[,] Master Fund does not have the power to vote, dispose, or do anything with these securities." DE 61 at 19.[4] It appears that the Second Circuit has disposed of such delegation theories. In *Huppe*, the Second Circuit was confronted with the argument that "the limited partners' delegation of exclusive power to vote and dispose of the Funds' portfolio securities to their respective general partners . . . precludes the Funds, who possessed merely an economic interest in the WPCS's shares, from being ten percent holders under the SEC's rules." *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 221 (2d Cir. 2012). The Circuit—relying chiefly on principles of agency law—rejected this argument. *Id.* Importantly, the Circuit also noted that

> under the Funds' "delegation" theory of Section 16(b) liability, only the general partners' pecuniary share of any short-swing profits accruing to the partnership's investment portfolio would be subject to disgorgement, because only general partners hold investment and voting power over the securities held in the partnership's portfolio—despite the fact that, when exercising that power, they are acting on behalf of the partnership rather than themselves.

*Id.* at 222.

Though a different contractual structure, the very same can be said about RCM and Master Fund—when executing the subject trades, RCM was acting on behalf of Master Fund. Indeed, a review of the express terms of the Investment Management Agreement—a document

---

[4] At oral argument, defendants' counsel also contended that because "the shares are class B stock [with] have essentially nominal voting power," such facts bear on defendants' intent and ability to exercise control over Flowers. DE 61 at 5. However, defendants have not presented any authority, and the Court has not located any, suggesting that the short swing profits rule is somehow limited to Class A voting stock. *Cf. Huppe v. WPCS Int'l Inc.,* 670 F.3d 214, 218 (2d Cir. 2012) ("As we have observed, it is 'quite apparent' that Section 16(b) may be applied not only to routine cash purchases and sales, but also to acquisitions and dispositions of equity securities in transactions such as conversions, options, stock warrants, and reclassifications"). Furthermore, the concerns underlying Rule 16 are not limited to voting rights, but also concern information asymmetry.

brought into effect via four identical signatures by defendant Martin contemporaneously affixed to the agreement[5]—makes it patent that Master Fund authorized RCM to act as its agent for all purposes relevant hereto.[6] This broad authority would appear to render the teachings of *Huppe*

---

[5] Interestingly, defendants' counsel places great weight on the 61-day termination provision contained in the Agreement. While not outcome determinative, counsel's argument raises the curious issue of the violability of such a provision contained in an agreement among four entities that entered said agreement by authorizing the same human to sign on behalf of all of them, and could, presumably, revise, amend, or abrogate that agreement with a few strokes of a pen. Notably absent from the termination provision of the agreement is a requirement that termination requires "unanimous consent" of Master Fund's directors or shareholders, which is an express requisite for termination by the other entities that are parties to the agreement. DE 51-6 at 5.

[6] According to the Agreement, RCM, as "investment manager" was accorded extremely broad authority to act on behalf of Master Fund:

> Such authority of the Investment Manager includes, without limitation and subject to the terms of the Articles, as applicable, the authority to (i) invest substantially all of the Feeder Funds' assets in the Master Fund, (ii) purchase, hold, sell, sell short, cover and otherwise deal in securities and financial instruments of any sort, including, without limitation, restricted and privately issued securities, on margin or otherwise, with the sole authority to exercise all rights, powers, privileges and other incidents of ownership or possession (including, but not limited to, voting power) with respect to all such securities and financial instruments held by the Master Fund; (iii) write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof; (iv) purchase, hold, sell, sell short and otherwise deal in commodities, commodity contracts, commodity futures, financial futures (including Index futures) and options in respect thereof; (v) purchase, hold, sell, sell short and otherwise deal in currencies, options thereon and rights therein, including forward foreign currency exchange contracts; (vi) purchase, hold, sell, sell short and otherwise deal in derivatives, swap contracts, partnership interests, interests in other investment companies or any other financial instruments that exist now or are hereafter created, (vii) conduct margin accounts with brokers; open, maintain and close bank accounts and draw checks or other orders for the payment of moneys; pledge securities for loans and effect borrowings from brokers, banks and other financial institutions; and (viii) enter into, make and perform any other contracts, agreements or other undertakings it may deem advisable in conducting the business of the Funds, including but not limited to contracts, agreements, or other undertakings with persons, firms or corporations affiliated with the Investment Manager, as may be necessary or proper in connection with the performance of the Investment Manager's duties hereunder.

DE 51-6 at 1–2.

and *Tonga* applicable to this case. Further, the notion that this arrangement could shield Master Fund from liability "would be inconsistent with the text and purposes of Section 16(b) and, if accepted, would seriously weaken the provision." *Huppe*, 670 F.3d at 222; *accord Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 51–52 (2d Cir. 2012), as amended (July 13, 2012) ("Under *Huppe*, therefore, both Cannell Capital and Tonga are "beneficial owners" for § 16(b) purposes, and therefore subject to disgorgement of the profits realized here by Tonga").

Indeed, even assuming that such a delegation could shield Master Fund from short-swing profit liability, "it is not necessarily the case that a party which has executed a contract purporting to delegate such authority has effectively done so." *Greenfield v. Cadian Capital Mgmt.*, *LP*, 213 F. Supp. 3d 509, 515 (S.D.N.Y. 2016); *see also Greenberg v. Hudson Bay Master Fund Ltd.*, No. 14 Civ. 5226(DLC), 2015 WL 2212215, *8 (S.D.N.Y. May 12, 2015) (citing 17 U.S.C. § 240.13d-3(a)) ("The regulations contemplate that a purchaser may not avoid Section 16(b) liability simply by delegating voting and investment authority to a third party"). "An entity may be the beneficial owner of securities even when it only indirectly shares or possesses voting and investment power." *Id.* (citing 17 U.S.C. § 240.13d-3(a)). Since nothing prevented defendants from altering the agreement at will, the facts here cannot be reasonably construed as an effective delegation. *See SEC Div. of Corp. Fin., Compliance and Disclosure Interpretations, Exchange Act Sections 13(D) and 13(G) and Reg. 13D-G Beneficial Ownership Reporting*, Q. 105.04 (Sept. 14, 2009) (citing *SEC Exchange Act Release No. 13291*, Example 11 (Feb. 24, 1977)) (a party need not report as beneficial owner where that entity "has delegated all authority to vote and dispose of its stock to an investment advisor and which does not retain the right under the contract to rescind the authority granted to the investment advisor within 60 days").

Lastly, the delegation theory fails here because it is undisputed that RCM, Martin, and

Master Fund are not unaffiliated parties. The parties have submitted a chart summarizing the interrelationships among defendants and several other related entities:



DE 53-7. Assuming the validity of the delegation theory, the intertwined relationship of these parties proves fatal. One leading treatise—relied upon by defendants on this motion—notes that:

> Generally, an entity is the beneficial owner of its portfolio securities where voting and investment decisions are made by the persons who ... are charged with making those decisions. The result may be different where the entity delegates voting and investment authority to **an unaffiliated third party** and does not retain the ability to revoke that authority within 60 days.

Peter J. Romeo & Alan L. Dye, SECTION 16 TREATISE & REPORTING GUIDE, § 2.03[5][f] (emphasis added); *Greenfield*, 213 F. Supp. 3d at 515 (quoting same with approval). Another treatise notes that "[a] person does not have beneficial ownership when he contracts the

investment power and voting power to **an independent third party**." Arnold S. Jacobs, *The Williams Act—Tender Offers and Stock Accumulations*, § 2:12 (2013) (emphasis added). Because it is beyond dispute that the defendants are not unaffiliated for these purposes, defendants' delegation theory fails, and Master Fund was a beneficial owner of the Flowers shares. Hence, plaintiff's motion for summary judgment with respect to Master Fund is granted, and all other pending motions denied.

## DAMAGES AND PREJUDGMENT INTEREST

The parties have agreed upon the calculation by plaintiff's expert in this matter, indicating that the net short swing profits realized by Master Fund total $4,909,395. DE 53-1 at 3; DE 56 at 7. Thus, judgment will be entered in this sum.

Plaintiff also seeks an award of prejudgment interest on this amount. The Second Circuit has observed:

> Prejudgment interest is generally awarded as part of § 16(b) recoveries, but the question of whether such interest should be given in a particular case is within the discretion of the trial court. At the end of a well-considered series of opinions, the district court suggested that the defendants, though liable, might well have acted in good faith. It therefore declined to award prejudgment interest. We do not believe that the district court abused its broad discretion in so deciding.

*Morales v. Freund*, 163 F.3d 763, 767 (2d Cir. 1999). Despite a period of fulsome discovery, plaintiff has failed to offer any evidence of bad faith in this case. Given the complexities of this matter, as well as the disclosure of beneficial ownership in Flowers' Schedule13G filings, one can easily posit that defendants were acting in good faith. Thus, the Court finds that plaintiff's request for an award of prejudgment interest is, on balance, unjustified on the facts before the Court.

## **CONCLUSION**

For the reasons set forth above, plaintiff's motion for summary judgment as to defendant Master Fund is hereby GRANTED, and judgment shall be entered in the amount of $4,909,395. All other motions are denied. The Clerk of the Court is directed to close this case.

Dated: Central Islip, New York
August 20, 2019

                                          /s/ Gary R. Brown
                                          Gary R. Brown
                                          United States Magistrate Judge