MANDATE

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of November, two thousand twenty.

Before:     Jon O. Newman,
            Rosemary S. Pooler,
                *Circuit Judges.*[*]

_____

Brad Packer, derivatively on behalf of 1-800-Flowers.com, Inc.,

    Plaintiff - Appellee-Cross-Appellant,

 v.

Raging Captial Management, LLC, Raging Capital Master Fund, Ltd., William C. Martin,

    Defendants - Appellants-Cross-Appellees,

1-800-Flowers.com, Inc.,

    Defendant.

_____

**JUDGMENT**

Docket No. 19-2703(L).
19-2852(XAP)

The appeal in the above captioned case from a judgment of the United States District Court for the Eastern District of New York was argued on the district court's record and the parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgement in favor of Appellee-Cross-Appellant Brad Packer is vacated, and the case is remanded for further proceedings. In view of this ruling, the cross-appeal from the denial of prejudgment interest to Packer is dismissed as moot.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

_____

[*] Circuit Judge Peter W. Hall, originally a member of this panel, is currently unavailable. The appeal is being decided by the remaining members of the panel, who are in agreement. See 2d Cir. IOP E(b).

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2020

Argued: August 17, 2020          Decided: November 23, 2020

Docket Nos. 19-2703, 19-2852

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRAD PACKER, DERIVATIVELY ON BEHALF OF 1-800-FLOWERS.COM, INC.,

*Plaintiff - Appellee-Cross-Appellant*,

V.

RAGING CAPITAL MANAGEMENT, LLC, RAGING CAPITAL MASTER FUND, LTD.,
WILLIAM C. MARTIN,

*Defendants - Appellants-Cross-Appellees*,

1-800-FLOWERS.COM, INC.,

*Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before: NEWMAN, POOLER *Circuit Judges*.[1]

Appeal and cross-appeal from a judgment of the Eastern District of New

York (Gary R. Brown, Magistrate Judge), granting summary judgment in favor of

---

[1] Circuit Judge Peter W. Hall, originally a member of this panel, is currently unavailable. The appeal is being decided by the remaining members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

Brad Packer in a derivative suit on behalf of 1-800-Flowers.com, Inc. against Raging Capital Master Fund, Ltd. ("Master Fund"). The District Court ruled that Master Fund was the beneficial owner of more than ten percent of the shares of 1-800-Flowers, Inc., which were bought and sold within a period of six months. The judgment requires Master Fund to disgorge $4,909,393 in short-swing profits for violating section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Master Fund contends in part that factual questions remain as to whether it was a beneficial owners of the shares.

Packer cross-appeals from the denial of prejudgment interest.

We conclude that factual questions remain on the issue of Master Fund's beneficial ownership and therefore remand. In view of that ruling, we dismiss the cross-appeal as moot.

Thomas J. Fleming, Olsham Frome Wolosky LLP, New York, NY (Martin D. Edel, Goulston & Storrs P.C., New York, NY, David M. Zucker, Goulston & Storrs P.C., Boston, MA, *on the brief*), for Defendants-Appellants-Cross-Appellees William C. Martin, Raging Capital Master Fund, Ltd., and Raging Capital Management, LLC.

Paul D. Wexler, New York, NY (Glenn F. Ostrager, Joshua S. Broitman, Roberto L. Gomez, Ostrager Chong Flaherty & Broitman P.C.,

New York, NY, *on the brief*), for Plaintiff-Appellee-Cross-Appellant Brad Packer.

(Douglas A. Rappaport, Akin Gump Strauss Hauer & Feld LLP, New York, NY, Z. W. Julius Chen, Akin Gump Strauss Hauer & Feld LLP, Washington, DC, Alan L. Dye, Hogan Lovells US LLP, Washington, DC, for *amicus curiae* Managed Funds Association, in support of Defendants-Appellants-Cross-Appellees.)

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether the customer of a regulated investment advisor was the beneficial owner of more than ten percent of the shares of 1-800-Flowers.com, Inc. ("Flowers"), which were bought and sold within an interval of six months[2] ("trading period"), a transaction for which section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), requires a beneficial owner to disgorge such short-swing profits. Appellants Raging Capital Management, LLC ("RCM"), Raging Capital Master Fund, Ltd. ("Master Fund"), and William C. Martin appeal from the Aug. 21, 2019, judgment of the District Court for the Eastern District of New York (Gary R. Brown, Magistrate Judge), requiring Master

---

[2] From April 30, 2014, to January 31, 2015. *See Packer v. Raging Capital Management, LLC,* No. 15-CV-5933, 2019 WL 3936813, at *1 (E.D.N.Y. Aug. 20, 2019).

Fund to disgorge $4,909,393 in short-swing profits in a derivative suit brought by Appellee Brad Packer on behalf of 1-800-Flowers.com, Inc. Packer cross-appeals from the denial of prejudgment interest.

We conclude that factual issues remain on the issue of whether Master Fund was the beneficial owner of the shares, and we therefore vacate the judgment against Master Fund and remand for further proceedings. In view of that ruling, we dismiss Packer's cross-appeal as moot.

## Background

Understanding the complicated factual background requires identification of four entities and several individuals:

RCM is a Delaware limited liability company, which is a registered investment advisor as defined by the Investment Advisers Act of 1940, 15 U.S.C. § 80b-2(a)(11).[3]

Master Fund is a Cayman Islands corporation, which is an investment fund and a customer of RCM.

Raging Capital Offshore Fund ("Offshore") is a Cayman Islands corporation, which is also a customer of RCM.

---

[3] The amicus curiae brief refers to a registered investment advisor as an "investment manager." Br. for amicus curiae at 4.

Raging Capital Fund (QP), LP ("QP"), is a Delaware limited partnership, which is also a customer of RCM.

Both Offshore and QP accept investments from the public and funnel these investments to Master Fund.

Offshore and QP are referred to in this litigation as "feeder funds." The feeder funds together own 100 percent of Master Fund's "Common Shares." During the trading period, the feeder funds had about 143 investors and now have about 230 investors.

Martin holds positions in RCM, Master Fund, and Offshore, and indirectly has a role in QP. He is the chairman, chief investment officer, and managing member of RCM, and owns most, and possibly all, of its shares.[4] Martin is also a member of the three-member board of directors of Master Fund. During the trading period, the other two directors of Master Fund were two Cayman Island LLCs, DMS Fund Governance I Ltd. ("DMS I") and DMS Fund Governance II Ltd. ("DMS II"), characterized by Martin as "directors services firms." Since November

---

[4] Packer's statement of undisputed facts asserts that Martin has "sole ownership of RCM," A-643, and Martin stated in a deposition, "I am the only owner" of RCM, A- 711. However, the Defendants dispute that Martin is the sole owner of RCM, and contend that he is the "majority owner" of RCM. A-793.

2015, the other two directors of Master Fund have been Don Ebanks and Wade Kenny.[5]

Martin is also a member of the three-member board of Offshore. During the trading period, the other two directors of Offshore were Ebanks and Kenny, although Kenny is no longer a director.

Martin is a limited partner of QP. The general partner of QP is RCM, which is controlled by Martin.

The relationship among RCM, Master Fund, Offshore, and QP is governed by an Investment Management Agreement ("IMA"), which was executed on November 9, 2012. Martin signed the IMA on behalf of all four parties to the agreement. Under the terms of the IMA, RCM makes "[a]ll investment decisions" for Master Fund, Offshore, and QP ("the Funds"), A-29, has "exclusive[] . . . control and discretion" over purchase or sale of the Funds' securities, A-30, and has "the sole authority to exercise all rights, powers, privileges, and other incidents of ownership or possession (including but not limited to, voting power) with respect to all such securities and financial instruments held by the Master Fund," A-29-A-

---

[5] In a sworn declaration, Martin states that, during the trading period, Ebanks and Kenny served as directors of Master Fund "through" DMS I and DMS II and, since November 2015, served as directors of Master Fund "in their individual capacities." A-32.

6

30. By these provisions of the IMA, the Defendants contend, Master Fund has delegated beneficial ownership of the Flowers shares to RCM.

Especially relevant to this appeal, the termination provision of the IMA states:

> (b) any party may terminate this Agreement effective at the close of business on the last day of any fiscal quarter by giving the other party not less than sixty-one days' written notice; provided, however, that (i) unanimous consent of shareholders of the Cayman Feeder [Offshore] is required for the Cayman Feeder to terminate this Agreement under (b) of this Section 9 and (ii) unanimous consent of the partners of the U.S. Feeder [QP] is required for the U.S. Feeder to terminate this Agreement under (b) of this section 9.

A-102.

*The litigation*. In October 2015, Packer filed a complaint derivatively on behalf of Flowers against RCM, Master Fund, and Martin to obtain disgorgement of profits resulting from a short-swing sale of Flowers stock. The Complaint alleged that the three defendants were a group for purposes of determining beneficial ownership and that the group had beneficial ownership of more than ten percent of Flowers Class A common stock.[6] On consent, the case was referred to Magistrate Judge Brown. In August 2019, with respect to the alleged section

---

[6] Because, after discovery, it became clear that Master Fund held more than ten percent of the outstanding Flowers shares during the trading period without any grouping, *see Packer*, 2019 WL 3936813, at *1, we need not consider any issue concerning grouping of shares. Whether Master Fund had beneficial ownership of those shares remains a central issue of this appeal.

16(b) violation, the District Court granted the Plaintiff's motion for summary judgment, denied the Defendants' motion for summary judgment, and ordered entry of judgment against Master Fund in the amount of $4,909,395; the District Court denied Packer's claim for prejudgment interest. *See Packer v. Raging Capital Management, LLC,* No. 15-CV-5933, 2019 WL 3936813 (E.D.N.Y. Aug. 20, 2019).[7] RCM, Master Fund, and Martin timely appealed. Packer cross-appealed from the denial of prejudgment interest.

## Discussion

Section 16(b) of the Exchange Act requires a "beneficial owner" of more than ten percent of a company's shares to disgorge profits obtained from a short-swing sale. 15 U.S.C. § 78p(b). In 1991, the SEC promulgated Rule 16a-1, which—"[s]olely for purposes of determining whether a person is a beneficial owner of more than ten percent [of an issuer's shares]—defined "beneficial owner" as "any person who is deemed a beneficial owner pursuant to section 13(d) of the Act." 17 C.F.R. § 240.16a-1(a)(1). In turn, Rule 13d-3 provides:

> (a) For purposes of section 13(d) . . . of the Act a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:

---

[7] The District Court had previously denied the Defendants' motion to dismiss the complaint. *See Packer v. Raging Capital Management, LLC,* 242 F. Supp. 3d 141 (E.D.N.Y. 2017).

(1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or

(2) Investment power which includes the power to dispose, or direct the disposition, of such security.

17 C.F.R. § 240.13d-3(a). Rule 13d-3 also provides that a person is deemed to be a beneficial owner of a security if that person has the right to acquire beneficial ownership of such security within sixty days. *See* 17 C.F.R. § 240.13d-3(d)(1)(i).

In 2009, the SEC advised that if a security holder "has delegated all authority to vote and dispose of its stock to an investment advisor" and lacks "the right under the contract to rescind the authority granted . . . within 60 days," the security holder does not need to "report beneficial ownership" of the securities. *See* SEC Division of Corporate Finance, Compliance and Disclosure Interpretations, Exchange Act Sections 13(d) and 13(g) and Regulation 13D-G Beneficial Ownership Reporting, Question 105.04 (Sept 14, 2009).[8]

In this case, the Defendants make two arguments to dispute Packer's contention that Master Fund was a beneficial owner of more ten percent of Flowers shares. The first builds on the undisputed premises that RCM, as a registered investment advisor, is an entity exempt from beneficial ownership of shares it holds on behalf of a customer by virtue of exclusion (v) of Rule 16a-1(a)(1), 17

---

[8] Available at https://www.sec.gov/divisions/corpfin/guidance/reg13d-interp.htm.

C.F.R. § 240.161(a)(1),[9] and that Martin is a control person with respect to RCM and exempt from beneficial ownership by virtue of exclusion (vii) of Rule 16a-1(a)(1), 17 C.F.R. § 240.161(a)(1).[10] Then, the Defendants assert in part II(C) of the brief that RCM's exempt status somehow confers a derivative exempt status on Master Fund. The District Court properly rejected what it termed the Defendants' "inoculation theory," stating, "There is no authority supporting the notion that an investor [Master Fund] can derivatively benefit from the exemption enjoyed by its registered investment advisor [RCM]." *Packer*, 2019 WL 3936813, at *2-*3. Nothing in *Egghead* supports Master Fund's argument that the registered investment advisor exception automatically extends to exempt all members of a group from beneficial ownership.

Master Fund endeavors to enlist *Egghead.com, Inc. v. Brookhaven Management Co.*, 340 F.3d 79 (2d Cir. 2003), in support of its exemption claims based on RCM's exemption. *Egghead* does not aid Master Fund. That decision considered a plaintiff's argument based on what was then exclusion (x) (now exclusion (xi)) of

---

[9] A registered investment advisor is not exempt from being deemed the beneficial owner of shares held for the benefit of its customers if the shares were acquired for the purpose or effect of influencing control of the issuer. *See* Rule 16a-1(a)(1)(v). Packer makes no claim that this limitation on the exemption is applicable in this case.

[10] Exclusion (vii) exempts "[a] parent holding company or control person, provided the aggregate amount held directly by the parent or control person, and directly or indirectly by their subsidiaries or affiliates that are not persons specific in § 240.16a-1(a)(1)(i) through (x), does not exceed one percent of the securities of the subject class." 17 C.F.R. § 240.16a-1(a)(1)(vii).

Rule 16a-1(a)(1), 17 C.F.R. § 240.16a-1(x) (as cited in *Egghead*, 340 F.3d at 81 n.1).[11] Exclusion (x) exempted from beneficial ownership a group, provided all its members were exempt from beneficial ownership by virtue of the exclusions in the first nine of the Rule's exemptions. *See* Rule 16a-1(a)(1)(i)-(ix), 17 C.F.R. § 240.16a-1(i)-(ix). The plaintiff's argument in *Egghead* was that the investment advisor in that case could not be exempt from beneficial ownership because it was a member of a group and all group members did not qualify for exemption under exclusion (x). Our Court rejected the argument, ruling that an investment advisor did not lose its exclusion (v) exemption just because it did not qualify for exemption under exclusion (x). *See Egghead*, 340 F.3d at 85-86. Nothing in *Egghead* supports Master Fund's argument that the registered investment advisor exception automatically extends to exempt all members of a group from beneficial ownership.

The Defendants' second argument to avoid Master Fund's beneficial ownership is that, by virtue of the IMA, Master Fund delegated to RCM investment and voting authority with respect to the Flowers shares that RCM

---

[11] Exclusion (xi) in the version of the rule cited in *Egghead* has been eliminated and replaced with what was then exclusion (x).

holds for its benefit. The District Court ruled that the delegation was not effective to preclude Master Fund's beneficial ownership for three reasons.

First, the District Court relied on the relationship among the parties to the IMA. "Assuming the validity of the delegation theory, the intertwined relationship of these parties proves fatal," and "the delegation theory fails here because it is undisputed that RCM, Martin, and Master Fund are not unaffiliated parties." *Packer*, 2019 WL 3936813, at *5. Second, the District Court understood the IMA to make RCM the agent of Master Fund. "[A] review of the express terms of the [IMA] . . . makes it patent that Master Fund authorized RCM to act as its agent for *all* purposes relevant thereto." *Id*. at *4 (emphasis added). Third, the District Court deemed Martin to have the power to amend the IMA, including its requirement of sixty-one days' notice for termination. "Since nothing prevented defendants from altering the agreement at will, the facts here cannot be reasonably construed as an effective delegation." *Id*. at *5. In the District Court's view, Martin, the person who signed the IMA for all four parties, "could, presumably, revise, amend, or abrogate that agreement with a few strokes of a pen." *Id*. at *4 n.5.

Before considering each of these three reasons, we set forth some basic principles concerning section 16(b). Section 16(b) imposes liability "irrespective of

any intention on the part of such beneficial owner, director, or officer," in entering the transaction. 15 U.S.C. § 78p(b). As we have recognized, "[i]t imposes a form of strict liability," thus serving as "strong medicine for the ill Congress sought to address." *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125-26 (2d Cir. 2018) (internal quotation marks omitted). "Courts have therefore 'been reluctant to exceed a literal, "mechanical" application of the statutory text in determining who may be subject to liability.'" *Id*. at 126 (quoting *Gollust v. Mendell*, 501 U.S. 115, 122 (1991)). "The strict liability remedy should be employed cautiously to avoid unfair application." *Id.* It is to be applied "narrowly." *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 251 (1976).

It would not be consistent with these principles to accept the District Court's first reason for rejecting Master Fund's delegation of voting and investing authority to RCM. Although Rule 13d-3(a) includes within the definition of a beneficial owner "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has" voting or investment authority, 17 C.F.R. § 240.13d-3(a), using generalized wording such as "intertwined" or "not unaffiliated"[12] to bring a person within the coverage of Rule

---

[12] The District Court quoted a leading treatise's statement that includes the word "unaffiliated" in relation to beneficial ownership. *Packer*, 2019 WL 3936813, at *5. After stating that "'an entity is the beneficial owner of its portfolio securities where voting and investment decisions are made by the persons who . . .

13d-3(a) would extend the reach of section 16(b) beyond the text of both the statute and the rule.

The District Court based its second reason for rejecting Master Fund's delegation to RCM–an agency relationship–on this Court's decisions in *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 46 (2d Cir. 2012), and *Huppe v. WPCS International, Inc.*, 670 F.3d 214 (2d Cir. 2012). *See Packer*, 2019 WL 3936813, at *3-*4. In *Tonga*, as relevant here, this Court ruled that, under applicable Delaware law, Del. Code Ann. tit. 6 § 15-301(a), a general partner (Cannell Capital), was the agent of a limited partnership (Tonga), and that an individual (Cannell), who was the sole managing member of the general partner, was an agent of the limited partnership's agent. As a result of these state-law-based agency relationships, both the limited partnership and the limited partner's agent were liable for a violation

---

are charged with making those decisions,'" the treatise adds, "'The result may be different where the entity delegates voting and investment authority to an unaffiliated third party and does not retain the ability to revoke that authority within 60 days.'" *Id*. (quoting Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide, § 2.03[5][f] at 148 (5th ed. 2020)). The use of the word "may" recognizes that the statement is only a possibility, and, more important, definitively states the governing rule that "an entity may not remain a beneficial owner of securities, however, where it delegates voting and investment authority to a third party and does not retain the ability to revoke that authority within 60 days." Romeo & Dye, § 2.03[5][f][i]. We note that treatise co-author Dye has signed the amicus curiae brief submitted by the Managed Fund Association in this appeal, which explains the word "unaffiliated" in the above-quoted sentence: "[T]he term 'unaffiliated' in this context means a distinct legal entity, as opposed to the fund's general partner . . . . The Customer Fund [Master Fund] and the RIA [RCM] are 'unaffiliated' in the relevant sense, given that the two are completely distinct corporate entities whose relationship is governed by strict contractual terms." Br. for Amicus Curiae at 26.

of section 16(b) by the managing member of the general partner. *See Tonga*, 684 F.2d at 51-52.

Somewhat similarly, in *Huppe*, on which *Tonga* was based, this Court ruled that, under the same Delaware law, two funds (identified as PE and QP), which were limited partners, were each agents of general partners (unidentified limited partnerships), and that two individuals (Marxe and Greenhouse), who were limited partners of those general partners, were agents of the general partners' agents. As a result, the funds were liable for section 16(b) violations by the individuals. 670 F.3d at 221-22.[13]

In the pending case, there is no comparable state-law-based agency relationship between Master Fund and RCM. They are both distinct corporations, and the District Court did not rule that the corporate veil could be pierced.

It is true that, pursuant to provisions of the IMA, Master Fund has made RCM its agent for the specific purpose of exercising voting and investment authority with respect to the Flowers (and any other) shares that RCM holds on Master Fund's behalf. That is the essence of a customer/investment advisor

---

[13] As we stated in *Rubenstein v. International Value Advisers, LLC*, 959 F.3d 541 (2d Cir. 2020), *Huppe* held only that an "insider principal cannot shed its insider status by transferring trading authority to a non-insider agent." *Id*. at 550.

relationship. But making an investment advisor a customer's agent for the specified purpose of carrying out the advisor's traditional functions for a customer does not make the advisor an agent for all purposes. Neither *Tonga* nor *Huppe*, nor anything in SEC statutes, rules, or guidance, supports such a result.

The District Court's third reason for rejecting delegation was the Court's view that Martin had the power to amend the IMA. Such power, if it existed, would allow him to eliminate the sixty-one days' notice requirement in the termination provision, thereby ending the delegation within sixty days of acquiring shares and triggering application of Rule 3d-3(a) and section 16(b) to short-swing profits. The District Court based its view of Martin's authority to *amend* the IMA on the fact that he had *signed* it on behalf of all four parties to the agreement. *See Packer*, 2019 WL 3936813, at *4 n.5, *5.

We do not doubt that Martin had authority to sign the IMA on behalf of all four parties to it. Martin was the controlling person of RCM. He signed on behalf of Master Fund pursuant to a resolution adopted by the three directors of Master Fund explicitly authorizing any one director to sign the IMA for that corporation. He signed on behalf of Offshore pursuant to a similar resolution adopted by

Offshore's board. He signed on behalf of QP as the controlling person of RCM, which was QP's general partner.

Authority for an individual to sign a document on behalf of an entity, however, does not necessarily carry with it authority to commit those entities to making changes in, or terminating, that document. We can accept that Martin could commit RCM to amend the IMA because he was in control of RCM. Whether he could similarly commit Master Fund and the feeder funds is not clear at this point. With respect to these three entities, the District Court stated, "Notably absent from the termination provision of the agreement is a requirement that termination requires 'unanimous consent' of Master Fund's directors or shareholders, which is an express requisite for termination of the other entities to the agreement." *Packer*, 2019 WL, at *4 n.5.

The Court's statement is problematic. First, with respect to Master Fund, the absence of a unanimous consent requirement in the IMA does not mean that Master Fund's board has authorized Martin alone to commit Master Fund to termination of the agreement. In fact, Martin has averred that the board of Master Fund "was empowered to act by majority vote only."[14] A-33. Second, with respect

---

[14] Packer relies on resolutions adopted by the board of Master Fund that authorize any one director, for example, Martin, to make changes to a group of agreements that includes the IMA. Master Fund

to Offshore, the termination provision requires unanimous consent of its shareholders, but the record to date does not indicate that such consent to termination has been given. Third, with respect to QP, the termination provision does not require unanimous consent of its directors or shareholders; it requires unanimous consent of its partners,[15] and the record to date does not indicate that such consent to termination has been given.

Packer's essential argument that Martin could commit Master Fund and the feeder funds to termination of the IMA is that he had the power to compel all of the required directors, partners, or shareholders of those entities to do his bidding. He asserts, for example, that Ebanks and Kenny were not independent of Martin. He points out that Ebanks acknowledged serving on the boards of about 200 entities, had never met Martin, participated in Master Fund's quarterly board meetings by telephone, and "provided no independent decision-making on behalf of Master Fund." Br. for Appellee at 7. Packer also cites Master Fund's Schedule 13G filings in June and July of 2014, stating that Master Fund

---

responds that this authority was limited to making changes in the *proposed* IMA, not the executed agreement. And Martin has averred that Master Fund's board can act only by majority vote. To whatever extent this dispute becomes relevant, it is an issue to be resolved either on a renewed motion for summary judgment on an expanded record or at trial.

[15] QP, a limited partnership, has neither shareholders nor directors.

18

acknowledged that it had shared beneficial ownership of more than ten percent of Flowers' common stock with RCM and Martin.

The Defendants have responded by challenging the accuracy or significance of Packer's allegations. For example, Martin averred that he has "no affiliation or relationship" with Ebanks or Kenny, the directors, along with Martin, of Master Fund and Offshore. A-32. Martin has characterized Ebanks and Kenny as "independent directors" of Master Fund and Offshore, acting as directors of these entities "through" two Cayman Island directors services firms. A-32. Martin explained that "[b]y 'independent' I mean directors who had no employment, financial, or other relationship with me or RCM." A-31. He also stated, "I have no power to unilaterally make decisions on behalf of [Master Fund]. Rather, decisions must be approved, at a minimum, by a majority of the board of directors." A-33, A-737. With respect to Master Fund's 13G Schedules, the Defendants point out that they disclosed the purchase and sale of the Flowers shares on those schedules, which they describe as "reserved for institutional investors who have no plan or intent to effect control of the issuer. *See* 17 C.F.R. § 240.13d-1(b)." Br. for Appellants at 5.[16]

---

[16] Neither side's brief discusses the significance, if any, of the fact that the 13G Schedules described Master Fund's "voting power" and "dispositive power" as "shared." A-121, A-131, A-140, A-150.

Packer seeks to diminish the persuasive force of some of Martin's sworn statements by calling them "self-serving," Br. for Appellee at 9, which they surely are. Evidence offered by a party to litigation is usually self-serving. That's why the party offers it. Whether it is credible and of sufficient persuasive force to support a favorable finding is a matter for a fact-finder. *See United States v. Scully*, 877 F.3d 464, 475 (2d Cir. 2017 ("[The witness] is competent to testify . . .even if his testimony is one-sided and self-serving.").

The District Court could not, on a motion for summary judgment, determine that Martin could alter the IMA on behalf of all four entities with "strokes of a pen." *Packer*, 2019 WL 3936813, at *4 n.5. It remains to be determined as a factual matter whether, under all the relevant circumstances, Martin is in control of Master Fund and the feeder funds with authority to commit these entities to altering or terminating the IMA. Whether that determination can be made on a renewed motion for summary judgment, after the record has been expanded, or will require a trial is a matter initially for the District Court on remand.

For these reasons, the judgment in favor of Packer is vacated, and the case is remanded for further proceedings. In view of this ruling, the cross-appeal from the denial of prejudgment interest to Packer is dismissed as moot.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2020

Argued:  August 17, 2020          Decided: November 23, 2020

Docket Nos. 19-2703, 19-2852

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRAD PACKER, DERIVATIVELY ON BEHALF OF 1-800-FLOWERS.COM, INC.,

*Plaintiff - Appellee-Cross-Appellant,*

v.

RAGING CAPITAL MANAGEMENT, LLC, RAGING CAPITAL MASTER FUND, LTD.,
WILLIAM C. MARTIN,

*Defendants - Appellants-Cross-Appellees,*

1-800-FLOWERS.COM, INC.,

*Defendant.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, POOLER *Circuit Judges*.[1]

Appeal and cross-appeal from a judgment of the Eastern District of New

York (Gary R. Brown, Magistrate Judge), granting summary judgment in favor of

---

[1] Circuit Judge Peter W. Hall, originally a member of this panel, is currently unavailable. The appeal is being decided by the remaining members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

Brad Packer in a derivative suit on behalf of 1-800-Flowers.com, Inc. against Raging Capital Master Fund, Ltd. ("Master Fund"). The District Court ruled that Master Fund was the beneficial owner of more than ten percent of the shares of 1-800-Flowers, Inc., which were bought and sold within a period of six months. The judgment requires Master Fund to disgorge $4,909,393 in short-swing profits for violating section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Master Fund contends in part that factual questions remain as to whether it was a beneficial owners of the shares.

Packer cross-appeals from the denial of prejudgment interest.

We conclude that factual questions remain on the issue of Master Fund's beneficial ownership and therefore remand. In view of that ruling, we dismiss the cross-appeal as moot.

> Thomas J. Fleming, Olsham Frome Wolosky LLP, New York, NY (Martin D. Edel, Goulston & Storrs P.C., New York, NY, David M. Zucker, Goulston & Storrs P.C., Boston, MA, *on the brief*), for Defendants-Appellants-Cross-Appellees William C. Martin, Raging Capital Master Fund, Ltd., and Raging Capital Management, LLC.
>
> Paul D. Wexler, New York, NY (Glenn F. Ostrager, Joshua S. Broitman, Roberto L. Gomez, Ostrager Chong Flaherty & Broitman P.C.,

New York, NY, *on the brief*), for Plaintiff-
Appellee-Cross-Appellant Brad Packer.


(Douglas A. Rappaport, Akin Gump Strauss
Hauer & Feld LLP, New York, NY, Z. W.
Julius Chen, Akin Gump Strauss Hauer &
Feld LLP, Washington, DC, Alan L. Dye,
Hogan Lovells US LLP, Washington, DC, for
*amicus curiae* Managed Funds Association,
in support of Defendants-Appellants-Cross-
Appellees.)

JON O. NEWMAN, Circuit Judge:

The issue on this appeal is whether the customer of a regulated investment

advisor was the beneficial owner of more than ten percent of the shares of 1-800-

Flowers.com, Inc. ("Flowers"), which were bought and sold within an interval of

six months[2] ("trading period"), a transaction for which section 16(b) of the

Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), requires a beneficial owner to

disgorge such short-swing profits. Appellants Raging Capital Management, LLC

("RCM"), Raging Capital Master Fund, Ltd. ("Master Fund"), and William C.

Martin appeal from the Aug. 21, 2019, judgment of the District Court for the

Eastern District of New York (Gary R. Brown, Magistrate Judge), requiring Master

---

[2] From April 30, 2014, to January 31, 2015. *See Packer v. Raging Capital Management, LLC*, No. 15-CV-5933, 2019 WL 3936813, at *1 (E.D.N.Y. Aug. 20, 2019).

Fund to disgorge $4,909,393 in short-swing profits in a derivative suit brought by Appellee Brad Packer on behalf of 1-800-Flowers.com, Inc. Packer cross-appeals from the denial of prejudgment interest.

We conclude that factual issues remain on the issue of whether Master Fund was the beneficial owner of the shares, and we therefore vacate the judgment against Master Fund and remand for further proceedings. In view of that ruling, we dismiss Packer's cross-appeal as moot.

## Background

Understanding the complicated factual background requires identification of four entities and several individuals:

RCM is a Delaware limited liability company, which is a registered investment advisor as defined by the Investment Advisers Act of 1940, 15 U.S.C. § 80b-2(a)(11).[3]

Master Fund is a Cayman Islands corporation, which is an investment fund and a customer of RCM.

Raging Capital Offshore Fund ("Offshore") is a Cayman Islands corporation, which is also a customer of RCM.

---

[3] The amicus curiae brief refers to a registered investment advisor as an "investment manager." Br. for amicus curiae at 4.

4

Raging Capital Fund (QP), LP ("QP"), is a Delaware limited partnership, which is also a customer of RCM.

Both Offshore and QP accept investments from the public and funnel these investments to Master Fund.

Offshore and QP are referred to in this litigation as "feeder funds." The feeder funds together own 100 percent of Master Fund's "Common Shares." During the trading period, the feeder funds had about 143 investors and now have about 230 investors.

Martin holds positions in RCM, Master Fund, and Offshore, and indirectly has a role in QP. He is the chairman, chief investment officer, and managing member of RCM, and owns most, and possibly all, of its shares.[4] Martin is also a member of the three-member board of directors of Master Fund. During the trading period, the other two directors of Master Fund were two Cayman Island LLCs, DMS Fund Governance I Ltd. ("DMS I") and DMS Fund Governance II Ltd. ("DMS II"), characterized by Martin as "directors services firms." Since November

---

[4] Packer's statement of undisputed facts asserts that Martin has "sole ownership of RCM," A-643, and Martin stated in a deposition, "I am the only owner" of RCM, A- 711. However, the Defendants dispute that Martin is the sole owner of RCM, and contend that he is the "majority owner" of RCM. A-793.

2015, the other two directors of Master Fund have been Don Ebanks and Wade Kenny.[5]

Martin is also a member of the three-member board of Offshore. During the trading period, the other two directors of Offshore were Ebanks and Kenny, although Kenny is no longer a director.

Martin is a limited partner of QP. The general partner of QP is RCM, which is controlled by Martin.

The relationship among RCM, Master Fund, Offshore, and QP is governed by an Investment Management Agreement ("IMA"), which was executed on November 9, 2012. Martin signed the IMA on behalf of all four parties to the agreement. Under the terms of the IMA, RCM makes "[a]ll investment decisions" for Master Fund, Offshore, and QP ("the Funds"), A-29, has "exclusive[] . . . control and discretion" over purchase or sale of the Funds' securities, A-30, and has "the sole authority to exercise all rights, powers, privileges, and other incidents of ownership or possession (including but not limited to, voting power) with respect to all such securities and financial instruments held by the Master Fund," A-29-A-

---

[5] In a sworn declaration, Martin states that, during the trading period, Ebanks and Kenny served as directors of Master Fund "through" DMS I and DMS II and, since November 2015, served as directors of Master Fund "in their individual capacities." A-32.

30. By these provisions of the IMA, the Defendants contend, Master Fund has delegated beneficial ownership of the Flowers shares to RCM.

Especially relevant to this appeal, the termination provision of the IMA states:

> (b) any party may terminate this Agreement effective at the close of business on the last day of any fiscal quarter by giving the other party not less than sixty-one days' written notice; provided, however, that (i) unanimous consent of shareholders of the Cayman Feeder [Offshore] is required for the Cayman Feeder to terminate this Agreement under (b) of this Section 9 and (ii) unanimous consent of the partners of the U.S. Feeder [QP] is required for the U.S. Feeder to terminate this Agreement under (b) of this section 9.

A-102.

*The litigation*. In October 2015, Packer filed a complaint derivatively on behalf of Flowers against RCM, Master Fund, and Martin to obtain disgorgement of profits resulting from a short-swing sale of Flowers stock. The Complaint alleged that the three defendants were a group for purposes of determining beneficial ownership and that the group had beneficial ownership of more than ten percent of Flowers Class A common stock.[6] On consent, the case was referred to Magistrate Judge Brown. In August 2019, with respect to the alleged section

---

[6] Because, after discovery, it became clear that Master Fund held more than ten percent of the outstanding Flowers shares during the trading period without any grouping, *see Packer*, 2019 WL 3936813, at *1, we need not consider any issue concerning grouping of shares. Whether Master Fund had beneficial ownership of those shares remains a central issue of this appeal.

16(b) violation, the District Court granted the Plaintiff's motion for summary judgment, denied the Defendants' motion for summary judgment, and ordered entry of judgment against Master Fund in the amount of $4,909,395; the District Court denied Packer's claim for prejudgment interest. *See Packer v. Raging Capital Management, LLC*, No. 15-CV-5933, 2019 WL 3936813 (E.D.N.Y. Aug. 20, 2019).[7] RCM, Master Fund, and Martin timely appealed. Packer cross-appealed from the denial of prejudgment interest.

## Discussion

Section 16(b) of the Exchange Act requires a "beneficial owner" of more than ten percent of a company's shares to disgorge profits obtained from a short-swing sale. 15 U.S.C. § 78p(b). In 1991, the SEC promulgated Rule 16a-1, which—"[s]olely for purposes of determining whether a person is a beneficial owner of more than ten percent [of an issuer's shares]—defined "beneficial owner" as "any person who is deemed a beneficial owner pursuant to section 13(d) of the Act." 17 C.F.R. § 240.16a-1(a)(1). In turn, Rule 13d-3 provides:

> (a) For purposes of section 13(d) . . . of the Act a beneficial owner of a security includes any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares:

---

[7] The District Court had previously denied the Defendants' motion to dismiss the complaint. *See Packer v. Raging Capital Management, LLC*, 242 F. Supp. 3d 141 (E.D.N.Y. 2017).

> (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or
>
> (2) Investment power which includes the power to dispose, or direct the disposition, of such security.

17 C.F.R. § 240.13d-3(a). Rule 13d-3 also provides that a person is deemed to be a beneficial owner of a security if that person has the right to acquire beneficial ownership of such security within sixty days. *See* 17 C.F.R. § 240.13d-3(d)(1)(i).

In 2009, the SEC advised that if a security holder "has delegated all authority to vote and dispose of its stock to an investment advisor" and lacks "the right under the contract to rescind the authority granted . . . within 60 days," the security holder does not need to "report beneficial ownership" of the securities. *See* SEC Division of Corporate Finance, Compliance and Disclosure Interpretations, Exchange Act Sections 13(d) and 13(g) and Regulation 13D-G Beneficial Ownership Reporting, Question 105.04 (Sept 14, 2009).[8]

In this case, the Defendants make two arguments to dispute Packer's contention that Master Fund was a beneficial owner of more ten percent of Flowers shares. The first builds on the undisputed premises that RCM, as a registered investment advisor, is an entity exempt from beneficial ownership of shares it holds on behalf of a customer by virtue of exclusion (v) of Rule 16a-1(a)(1), 17

---

[8] Available at https://www.sec.gov/divisions/corpfin/guidance/reg13d-interp.htm.

C.F.R. § 240.161(a)(1),[9] and that Martin is a control person with respect to RCM and exempt from beneficial ownership by virtue of exclusion (vii) of Rule 16a-1(a)(1), 17 C.F.R. § 240.161(a)(1).[10] Then, the Defendants assert in part II(C) of the brief that RCM's exempt status somehow confers a derivative exempt status on Master Fund. The District Court properly rejected what it termed the Defendants' "inoculation theory," stating, "There is no authority supporting the notion that an investor [Master Fund] can derivatively benefit from the exemption enjoyed by its registered investment advisor [RCM]." *Packer*, 2019 WL 3936813, at \*2-\*3. Nothing in *Egghead* supports Master Fund's argument that the registered investment advisor exception automatically extends to exempt all members of a group from beneficial ownership.

Master Fund endeavors to enlist *Egghead.com, Inc. v. Brookhaven Management Co.*, 340 F.3d 79 (2d Cir. 2003), in support of its exemption claims based on RCM's exemption. *Egghead* does not aid Master Fund. That decision considered a plaintiff's argument based on what was then exclusion (x) (now exclusion (xi)) of

---

[9] A registered investment advisor is not exempt from being deemed the beneficial owner of shares held for the benefit of its customers if the shares were acquired for the purpose or effect of influencing control of the issuer. *See* Rule 16a-1(a)(1)(v). Packer makes no claim that this limitation on the exemption is applicable in this case.

[10] Exclusion (vii) exempts "[a] parent holding company or control person, provided the aggregate amount held directly by the parent or control person, and directly or indirectly by their subsidiaries or affiliates that are not persons specific in § 240.16a-1(a)(1)(i) through (x), does not exceed one percent of the securities of the subject class." 17 C.F.R. § 240.16a-1(a)(1)(vii).

Rule 16a-1(a)(1), 17 C.F.R. § 240.16a-1(x) (as cited in *Egghead*, 340 F.3d at 81 n.1).[11] Exclusion (x) exempted from beneficial ownership a group, provided all its members were exempt from beneficial ownership by virtue of the exclusions in the first nine of the Rule's exemptions. *See* Rule 16a-1(a)(1)(i)-(ix), 17 C.F.R. § 240.16a-1(i)-(ix). The plaintiff's argument in *Egghead* was that the investment advisor in that case could not be exempt from beneficial ownership because it was a member of a group and all group members did not qualify for exemption under exclusion (x). Our Court rejected the argument, ruling that an investment advisor did not lose its exclusion (v) exemption just because it did not qualify for exemption under exclusion (x). *See Egghead*, 340 F.3d at 85-86. Nothing in *Egghead* supports Master Fund's argument that the registered investment advisor exception automatically extends to exempt all members of a group from beneficial ownership.

The Defendants' second argument to avoid Master Fund's beneficial ownership is that, by virtue of the IMA, Master Fund delegated to RCM investment and voting authority with respect to the Flowers shares that RCM

---

[11] Exclusion (xi) in the version of the rule cited in *Egghead* has been eliminated and replaced with what was then exclusion (x).

holds for its benefit. The District Court ruled that the delegation was not effective to preclude Master Fund's beneficial ownership for three reasons.

First, the District Court relied on the relationship among the parties to the IMA. "Assuming the validity of the delegation theory, the intertwined relationship of these parties proves fatal," and "the delegation theory fails here because it is undisputed that RCM, Martin, and Master Fund are not unaffiliated parties." *Packer*, 2019 WL 3936813, at *5. Second, the District Court understood the IMA to make RCM the agent of Master Fund. "[A] review of the express terms of the [IMA] . . . makes it patent that Master Fund authorized RCM to act as its agent for *all* purposes relevant thereto." *Id*. at *4 (emphasis added). Third, the District Court deemed Martin to have the power to amend the IMA, including its requirement of sixty-one days' notice for termination. "Since nothing prevented defendants from altering the agreement at will, the facts here cannot be reasonably construed as an effective delegation." *Id*. at *5. In the District Court's view, Martin, the person who signed the IMA for all four parties, "could, presumably, revise, amend, or abrogate that agreement with a few strokes of a pen." *Id*. at *4 n.5.

Before considering each of these three reasons, we set forth some basic principles concerning section 16(b). Section 16(b) imposes liability "irrespective of

any intention on the part of such beneficial owner, director, or officer," in entering the transaction. 15 U.S.C. § 78p(b).  As we have recognized, "[i]t imposes a form of strict liability," thus serving as "strong medicine for the ill Congress sought to address." *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125-26 (2d Cir. 2018) (internal quotation marks omitted). "Courts have therefore 'been reluctant to exceed a literal, "mechanical" application of the statutory text in determining who may be subject to liability.'" *Id*. at 126 (quoting *Gollust v. Mendell*, 501 U.S. 115, 122 (1991)). "The strict liability remedy should be employed cautiously to avoid unfair application." *Id.* It is to be applied "narrowly." *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 251 (1976).

It would not be consistent with these principles to accept the District Court's first reason for rejecting Master Fund's delegation of voting and investing authority to RCM. Although Rule 13d-3(a) includes within the definition of a beneficial owner "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has" voting or investment authority, 17 C.F.R. § 240.13d-3(a), using generalized wording such as "intertwined" or "not unaffiliated"[12] to bring a person within the coverage of Rule

---

[12] The District Court quoted a leading treatise's statement that includes the word "unaffiliated" in relation to beneficial ownership. *Packer*, 2019 WL 3936813, at *5. After stating that "'an entity is the beneficial owner of its portfolio securities where voting and investment decisions are made by the persons who . . .

13d-3(a) would extend the reach of section 16(b) beyond the text of both the statute and the rule.

The District Court based its second reason for rejecting Master Fund's delegation to RCM–an agency relationship–on this Court's decisions in *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 46 (2d Cir. 2012), and *Huppe v. WPCS International, Inc.*, 670 F.3d 214 (2d Cir. 2012). *See Packer*, 2019 WL 3936813, at *3-*4. In *Tonga*, as relevant here, this Court ruled that, under applicable Delaware law, Del. Code Ann. tit. 6 § 15-301(a), a general partner (Cannell Capital), was the agent of a limited partnership (Tonga), and that an individual (Cannell), who was the sole managing member of the general partner, was an agent of the limited partnership's agent. As a result of these state-law-based agency relationships, both the limited partnership and the limited partner's agent were liable for a violation

---

are charged with making those decisions,'" the treatise adds, "'The result may be different where the entity delegates voting and investment authority to an unaffiliated third party and does not retain the ability to revoke that authority within 60 days.'" *Id.* (quoting Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide, § 2.03[5][f] at 148 (5th ed. 2020)). The use of the word "may" recognizes that the statement is only a possibility, and, more important, definitively states the governing rule that "an entity may not remain a beneficial owner of securities, however, where it delegates voting and investment authority to a third party and does not retain the ability to revoke that authority within 60 days." Romeo & Dye, § 2.03[5][f][i]. We note that treatise co-author Dye has signed the amicus curiae brief submitted by the Managed Fund Association in this appeal, which explains the word "unaffiliated" in the above-quoted sentence: "[T]he term 'unaffiliated' in this context means a distinct legal entity, as opposed to the fund's general partner . . . . The Customer Fund [Master Fund] and the RIA [RCM] are 'unaffiliated' in the relevant sense, given that the two are completely distinct corporate entities whose relationship is governed by strict contractual terms." Br. for Amicus Curiae at 26.

of section 16(b) by the managing member of the general partner. *See Tonga*, 684 F.2d at 51-52.

Somewhat similarly, in *Huppe*, on which *Tonga* was based, this Court ruled that, under the same Delaware law, two funds (identified as PE and QP), which were limited partners, were each agents of general partners (unidentified limited partnerships), and that two individuals (Marxe and Greenhouse), who were limited partners of those general partners, were agents of the general partners' agents. As a result, the funds were liable for section 16(b) violations by the individuals. 670 F.3d at 221-22.[13]

In the pending case, there is no comparable state-law-based agency relationship between Master Fund and RCM. They are both distinct corporations, and the District Court did not rule that the corporate veil could be pierced.

It is true that, pursuant to provisions of the IMA, Master Fund has made RCM its agent for the specific purpose of exercising voting and investment authority with respect to the Flowers (and any other) shares that RCM holds on Master Fund's behalf. That is the essence of a customer/investment advisor

---

[13] As we stated in *Rubenstein v. International Value Advisers, LLC*, 959 F.3d 541 (2d Cir. 2020), *Huppe* held only that an "insider principal cannot shed its insider status by transferring trading authority to a non-insider agent." *Id*. at 550.

relationship. But making an investment advisor a customer's agent for the specified purpose of carrying out the advisor's traditional functions for a customer does not make the advisor an agent for all purposes. Neither *Tonga* nor *Huppe*, nor anything in SEC statutes, rules, or guidance, supports such a result.

The District Court's third reason for rejecting delegation was the Court's view that Martin had the power to amend the IMA. Such power, if it existed, would allow him to eliminate the sixty-one days' notice requirement in the termination provision, thereby ending the delegation within sixty days of acquiring shares and triggering application of Rule 3d-3(a) and section 16(b) to short-swing profits. The District Court based its view of Martin's authority to *amend* the IMA on the fact that he had *signed* it on behalf of all four parties to the agreement. *See Packer*, 2019 WL 3936813, at *4 n.5, *5.

We do not doubt that Martin had authority to sign the IMA on behalf of all four parties to it. Martin was the controlling person of RCM. He signed on behalf of Master Fund pursuant to a resolution adopted by the three directors of Master Fund explicitly authorizing any one director to sign the IMA for that corporation. He signed on behalf of Offshore pursuant to a similar resolution adopted by

Offshore's board. He signed on behalf of QP as the controlling person of RCM, which was QP's general partner.

Authority for an individual to sign a document on behalf of an entity, however, does not necessarily carry with it authority to commit those entities to making changes in, or terminating, that document. We can accept that Martin could commit RCM to amend the IMA because he was in control of RCM. Whether he could similarly commit Master Fund and the feeder funds is not clear at this point. With respect to these three entities, the District Court stated, "Notably absent from the termination provision of the agreement is a requirement that termination requires 'unanimous consent' of Master Fund's directors or shareholders, which is an express requisite for termination of the other entities to the agreement." *Packer*, 2019 WL, at *4 n.5.

The Court's statement is problematic. First, with respect to Master Fund, the absence of a unanimous consent requirement in the IMA does not mean that Master Fund's board has authorized Martin alone to commit Master Fund to termination of the agreement. In fact, Martin has averred that the board of Master Fund "was empowered to act by majority vote only."[14] A-33. Second, with respect

---

[14] Packer relies on resolutions adopted by the board of Master Fund that authorize any one director, for example, Martin, to make changes to a group of agreements that includes the IMA. Master Fund

to Offshore, the termination provision requires unanimous consent of its shareholders, but the record to date does not indicate that such consent to termination has been given. Third, with respect to QP, the termination provision does not require unanimous consent of its directors or shareholders; it requires unanimous consent of its partners,[15] and the record to date does not indicate that such consent to termination has been given.

Packer's essential argument that Martin could commit Master Fund and the feeder funds to termination of the IMA is that he had the power to compel all of the required directors, partners, or shareholders of those entities to do his bidding. He asserts, for example, that Ebanks and Kenny were not independent of Martin. He points out that Ebanks acknowledged serving on the boards of about 200 entities, had never met Martin, participated in Master Fund's quarterly board meetings by telephone, and "provided no independent decision-making on behalf of Master Fund." Br. for Appellee at 7. Packer also cites Master Fund's Schedule 13G filings in June and July of 2014, stating that Master Fund

---

responds that this authority was limited to making changes in the *proposed* IMA, not the executed agreement. And Martin has averred that Master Fund's board can act only by majority vote. To whatever extent this dispute becomes relevant, it is an issue to be resolved either on a renewed motion for summary judgment on an expanded record or at trial.

[15] QP, a limited partnership, has neither shareholders nor directors.

acknowledged that it had shared beneficial ownership of more than ten percent of Flowers' common stock with RCM and Martin.

The Defendants have responded by challenging the accuracy or significance of Packer's allegations. For example, Martin averred that he has "no affiliation or relationship" with Ebanks or Kenny, the directors, along with Martin, of Master Fund and Offshore. A-32. Martin has characterized Ebanks and Kenny as "independent directors" of Master Fund and Offshore, acting as directors of these entities "through" two Cayman Island directors services firms. A-32. Martin explained that "[b]y 'independent' I mean directors who had no employment, financial, or other relationship with me or RCM." A-31. He also stated, "I have no power to unilaterally make decisions on behalf of [Master Fund]. Rather, decisions must be approved, at a minimum, by a majority of the board of directors." A-33, A-737. With respect to Master Fund's 13G Schedules, the Defendants point out that they disclosed the purchase and sale of the Flowers shares on those schedules, which they describe as "reserved for institutional investors who have no plan or intent to effect control of the issuer. *See* 17 C.F.R. § 240.13d-1(b)." Br. for Appellants at 5.[16]

---

[16] Neither side's brief discusses the significance, if any, of the fact that the 13G Schedules described Master Fund's "voting power" and "dispositive power" as "shared." A-121, A-131, A-140, A-150.

Packer seeks to diminish the persuasive force of some of Martin's sworn statements by calling them "self-serving," Br. for Appellee at 9, which they surely are. Evidence offered by a party to litigation is usually self-serving. That's why the party offers it. Whether it is credible and of sufficient persuasive force to support a favorable finding is a matter for a fact-finder. *See United States v. Scully*, 877 F.3d 464, 475 (2d Cir. 2017 ("[The witness] is competent to testify . . .even if his testimony is one-sided and self-serving.").

The District Court could not, on a motion for summary judgment, determine that Martin could alter the IMA on behalf of all four entities with "strokes of a pen." *Packer*, 2019 WL 3936813, at *4 n.5. It remains to be determined as a factual matter whether, under all the relevant circumstances, Martin is in control of Master Fund and the feeder funds with authority to commit these entities to altering or terminating the IMA. Whether that determination can be made on a renewed motion for summary judgment, after the record has been expanded, or will require a trial is a matter initially for the District Court on remand.

For these reasons, the judgment in favor of Packer is vacated, and the case is remanded for further proceedings. In view of this ruling, the cross-appeal from the denial of prejudgment interest to Packer is dismissed as moot.