23-367-cv
*Packer v. Raging Capital Management, LLC*

# In the
# United States Court of Appeals
## for the Second Circuit

————————

AUGUST TERM 2023

ARGUED: May 6, 2024
DECIDED: June 24, 2024

No. 23-367-cv

————————

BRAD PACKER, derivatively on behalf of 1-800-FLOWERS.COM, INC.
*Plaintiff-Appellant*,

v.

RAGING CAPITAL MANAGEMENT, LLC, RAGING CAPITAL MASTER
FUND, LTD., WILLIAM C. MARTIN,
*Defendants-Appellees*,

1-800-FLOWERS.COM, INC.,
*Defendant*.

————————

Appeal from the United States District Court
for the Eastern District of New York

No. 15-cv-5933, James M. Wicks, *Magistrate Judge*

————————

CERTIFIED COPY ISSUED ON 06/24/2024

Before: NEWMAN, CABRANES, and LOHIER, *Circuit Judges*.

––––––––––––

In *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170 (2d Cir. 2012), we evaluated whether the plaintiff had constitutional standing to bring a suit under Section 16(b) of the Securities Exchange Act of 1934, which requires owners of more than ten percent of a company's stock ("10% beneficial owners") to disgorge profits made by buying and selling that company's stock within a six-month window. If the company does not promptly sue to recover these so-called "short-swing" profits, a shareholder may sue the 10% beneficial owner on the company's behalf. We held that a violation of Section 16(b) inflicts an injury that confers constitutional standing.

This case, on appeal before us for the second time, presents the same question as *Donoghue*. The United States District Court for the Eastern District of New York (James M. Wicks, *Magistrate Judge*) reached the opposite conclusion as our panel, however. It determined that *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021), which elaborated on the "concrete injury" requirement of constitutional standing, abrogated *Donoghue*. The District Court thus dismissed Plaintiff-Appellant Brad Packer's Section 16(b) derivative suit against Defendants-Appellees Raging Capital Management, LLC, Raging Capital Master Fund, Ltd., and William C. Martin, reasoning that Packer lacked constitutional standing because he did not allege a concrete injury. Packer appealed the judgment directly to our Court, as opposed to a District Judge, because the parties had agreed to

2

Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). Accordingly, we must decide whether Magistrate Judge Wicks is correct that *TransUnion* abrogated our decision in *Donoghue*.

We disagree. *TransUnion* did not abrogate *Donoghue*, and the District Court erred in holding that it did. First, a District Court must follow controlling precedent—even precedent the District Court believes may eventually be overturned—rather than preemptively declaring that our caselaw has been abrogated. Second, *TransUnion* did not cast doubt on, much less abrogate, *Donoghue*. To determine whether an intangible injury is sufficiently concrete to confer constitutional standing, *TransUnion* instructed courts to identify a "close historical or common-law analogue for the[] asserted injury." 594 U.S. at 424. In *Donoghue*, we had identified such an analogue for a Section 16(b) injury: breach of fiduciary duty. Because nothing in *TransUnion* undermines *Donoghue*, the District Court erred in dismissing Packer's Section 16(b) suit.

Accordingly, we **REVERSE** the March 13, 2023 judgment of the District Court dismissing the action for lack of constitutional standing and **REMAND** for further proceedings consistent with this opinion.

———————

GLENN F. OSTRAGER (Joshua S. Broitman, Roberto L. Gomez, *on the brief*), Ostrager Chong Flaherty & Broitman P.C., New York, NY, *and* Paul D. Wexler, New York, NY, *for Plaintiff-Appellant* Brad Packer.

THOMAS J. FLEMING (Daniel M. Stone, *on the brief*), Olshan Frome Wolosky LLP, New York, NY, *for Defendants-Appellees* Raging Capital Management, LLC, Raging Capital Master Fund, Ltd., *and* William C. Martin.

Archith Ramkumar (Megan Barbero, Michael A. Conley, Jeffrey A. Berger, *on the brief*), Securities and Exchange Commission, Washington, DC, *for Amicus Curiae* Securities and Exchange Commission, *in support of Plaintiff-Appellant*.

—————

JOSÉ A. CABRANES, *Circuit Judge*:

In *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170 (2d Cir. 2012), we evaluated whether the plaintiff had constitutional standing to bring a suit under Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), which requires owners of more than ten percent of a company's stock ("10% beneficial owners") to disgorge profits made by buying and selling that company's stock within a six-month window.[1] If the company does not promptly sue to recover these so-called "short-swing" profits, a shareholder may sue the 10%

---

[1] *See* 15 U.S.C. § 78p(b).

beneficial owner on the company's behalf.[2] We held that a violation of Section 16(b) inflicts an injury that confers constitutional standing.[3]

This case, on appeal before us for the second time, presents the same question as *Donoghue*. The United States District Court for the Eastern District of New York (James M. Wicks, *Magistrate Judge*) reached the opposite conclusion as our panel, however. It determined that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), which elaborated on the "concrete injury" requirement of constitutional standing, abrogated *Donoghue*. The Court thus dismissed Plaintiff-Appellant Brad Packer's Section 16(b) derivative suit against Defendants-Appellees Raging Capital Management, LLC, Raging Capital Master Fund, Ltd., and William C. Martin (jointly, "Appellees"), reasoning that Packer lacked constitutional standing because he did not allege a concrete injury.[4] Packer appealed the judgment directly to our Court, as opposed to a District Judge, because the parties had agreed to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

---

[2] *See Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012); *Olagues v. Icahn*, 866 F.3d 70, 72 (2d Cir. 2017); *see also Short-Swing Profits*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "short-swing profits" as "[p]rofits made by a corporate insider on the purchase and sale (or sale and purchase) of company stock within a six-month period").

[3] *Donoghue*, 696 F.3d at 175-80.

[4] *Packer v. Raging Cap. Mgmt., LLC*, 661 F. Supp. 3d 3, 17-18 (E.D.N.Y. 2023).

Accordingly, we must decide whether Magistrate Judge Wicks is correct that *TransUnion* abrogated our decision in *Donoghue*.

We disagree. *TransUnion* did not abrogate *Donoghue*, and the District Court erred in holding that it did. First, a District Court must follow controlling precedent—even precedent the District Court believes may eventually be overturned—rather than preemptively declaring that our caselaw has been abrogated. Second, *TransUnion* did not cast doubt on, much less abrogate, *Donoghue*. To determine whether an intangible injury is sufficiently concrete to confer constitutional standing, *TransUnion* instructed courts to identify a "close historical or common-law analogue for the[] asserted injury."[5] In *Donoghue*, we had identified such an analogue for a Section 16(b) injury: breach of fiduciary duty.[6] Because nothing in *TransUnion* undermines *Donoghue*, the District Court erred in dismissing Packer's Section 16(b) suit.

Accordingly, we **REVERSE** the March 13, 2023 judgment of the District Court dismissing the action for lack of constitutional standing and **REMAND** for further proceedings consistent with this opinion.

---

[5] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021).

[6] *Donoghue*, 696 F.3d at 177-80; *see also* Section II.B, *post*.

# I.   BACKGROUND

Unless otherwise noted, the relevant facts in this appeal are undisputed. We summarize them below.

Brad Packer, a shareholder of 1-800-Flowers.com, Inc. ("FLWS"), alleges that during a six-month period in 2014 and 2015, Appellees bought and sold FLWS stock while they were 10% beneficial owners of FLWS.[7] After FLWS declined to sue Appellees, Packer filed a shareholder derivative suit in the Eastern District of New York alleging that Appellees violated Section 16(b) of the Exchange Act.

In 2020, we vacated the judgment of the District Court (Gary R. Brown, *Magistrate Judge*) granting summary judgment to Packer, holding that questions of material fact remained as to Raging Capital's beneficial ownership status and discussed those questions.[8] On

---

[7] Appendix ("A") 22-24; *see also* A23 (Complaint alleging that "the Raging Capital Group purchased at least 1,713,078 shares while a greater than 10% beneficial owner between April 30, 2014 and September 30, 2014, and that the Raging Capital Group then sold 1,580,504 shares while a greater than 10% beneficial owner between September 30, 2014 and January 31, 2015."). Although we assume without deciding that Appellees were in fact 10% beneficial owners of FLWS, we intimate no view on Appellees' beneficial ownership status, which is a merits question reserved for the District Court.

[8] *Packer v. Raging Cap. Mgmt., LLC*, 981 F.3d 148, 157 (2d Cir. 2020). The parties consented to Magistrate Judge jurisdiction for proceedings below. A6. A

remand, the District Court (James W. Wicks, *Magistrate Judge*) granted Appellees' motion to dismiss.[9] The Court reasoned that Packer lacked constitutional standing to bring a Section 16(b) suit because Packer did not allege that he suffered a "concrete" injury.[10] The case returns to us on appeal.

## II.   DISCUSSION

In reviewing *de novo* the District Court's decision to dismiss for lack of constitutional standing, we "borrow from the familiar [Federal] Rule [of Civil Procedure] 12(b)(6) standard" to "constru[e] the complaint in plaintiff's favor and accept[] as true all material allegations contained therein."[11] We have appellate jurisdiction to review the dismissal order under 28 U.S.C. § 1291.

---

Magistrate Judge is a judicial officer of the United States District Courts appointed by the judges of the District Court to assist the District Judges in performing their duties. Because Magistrate Judges are neither nominated by the President nor confirmed by the Senate, they are not "Judges . . . of the . . . inferior Courts" as defined by Article III of the United States Constitution. Accordingly, their powers are limited by statute. *See* 28 U.S.C. § 636. In particular, their authority to enter judgment in civil matters requires the consent of the parties. *See id.* § 636(c)(1).

[9] *Packer*, 661 F. Supp. 3d at 18.

[10] *Id*. at 17-18.

[11] *Donoghue*, 696 F.3d at 173.

In *Donoghue*, a comprehensive and unanimous opinion for our Court, we held that a violation of Section 16(b) of the Exchange Act "causes injury . . . sufficient for constitutional standing."[12] The question before us is whether the Supreme Court's decision in *TransUnion* abrogated *Donoghue*. We hold that it did not.

### A. Article III's Concrete Injury Requirement After *TransUnion*

Article III of the Constitution requires that plaintiffs establish standing to sue in federal court.[13] The Supreme Court has instructed that, to establish Article III standing—also known as constitutional standing—"a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."[14] Injuries may be "tangible harms, such as physical harms and monetary harms," or—as here—"intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion."[15]

---

[12] *Id.* at 180.

[13] *See* U.S. CONST. art. III, § 2 (limiting federal judicial power to "Cases" and "Controversies"); *TransUnion*, 594 U.S. at 417.

[14] *TransUnion*, 594 U.S. at 423.

[15] *Id.* at 425.

In determining whether an intangible injury is sufficiently "concrete" to satisfy Article III, the Supreme Court, in the 2016 case *Spokeo, Inc. v. Robins*, advised courts to consider "history and the judgment of Congress," as well as whether the injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."[16] Although "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law,'" a statutory violation alone does not establish constitutional standing.[17]

Five years later, in *TransUnion LLC v. Ramirez*, the Supreme Court elaborated on *Spokeo* by instructing plaintiffs to identify "a close historical or common-law analogue for their asserted injury."[18] But the analogue need not be an "exact duplicate in American history and tradition."[19] *TransUnion* further held that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a

---

[16] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016).

[17] *Id.* at 341 (alteration adopted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 578 (1992)).

[18] *TransUnion*, 594 U.S. at 424.

[19] *Id.*

concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm."[20]

This Circuit's approach to constitutional standing prior to *TransUnion* had distinguished between "substantive" and "procedural" rights.[21] But *TransUnion* "eliminated the significance of such classifications" by clarifying that whether a statute protects against substantive or procedural harm "is of little (or no) import."[22] Instead, *TransUnion* underscored *Spokeo*'s holding that what matters is "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts."[23]

## B.  Section 16(b) and *Donoghue*

This is not the first time we have addressed a challenge to a shareholder's constitutional standing to sue under Section 16(b). We rejected a near-identical challenge to a Section 16(b) action in 2012. In *Donoghue v. Bulldog Investors General Partnership*, we categorically held that "short-swing trading in an issuer's stock by a 10% beneficial

---

[20] *Id.* at 436.

[21] *See Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 997 F.3d 436, 446 (2d Cir. 2021), *opinion withdrawn and superseded on reh'g*, 19 F.4th 58 (2d Cir. 2021).

[22] *Maddox*, 19 F.4th at 64 & n.2.

[23] *TransUnion*, 594 U.S. at 424 (quoting *Spokeo*, 578 U.S. at 341).

owner in violation of Section 16(b) of the Securities Exchange Act causes injury to the issuer sufficient for constitutional standing."[24]

In reaching this conclusion, we looked to the history and the judgment of Congress, noting that the enacted purpose of Section 16(b) is "to prevent 'the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer.'"[25] We explained that the "flat rule" of Section 16(b) "impose[s] a form of strict liability" by effectively prohibiting "an entire 'class of transactions' . . . 'in which the possibility of abuse' of inside information 'was believed to be intolerably great.'"[26] Its broad scope and strict liability are prophylactic. As Judge Learned Hand observed nearly 75 years ago, "if only those persons were liable, who could be proved to have a bargaining advantage, the execution of [Section 16(b)] would be so encumbered as to defeat its whole purpose."[27]

---

[24] *Donoghue*, 696 F.3d at 180.

[25] *Id.* at 176 (quoting 15 U.S.C. § 78p(b)).

[26] *Id*. at 174 (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012)); *id.* at 176 (quoting *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972)).

[27] *Id.* at 176 (alteration adopted) (quoting *Gratz v. Claughton*, 187 F.2d 46, 50 (2d Cir. 1951) (L. Hand, *Chief Judge*)).

Thus, Section 16(b) "effectively makes 10% 'beneficial owners [into] fiduciaries' . . . at least to the extent of making all short-swing transactions by such persons in the issuer's stock 'breaches of trust.'"[28] Under the statute, 10% beneficial owners become "constructive trustee[s] of the corporation" irrespective of "whether the statutory fiduciaries were actually privy to inside information or whether they traded with the intent to profit from such information."[29] In other words, Section 16(b) imposes a "fiduciary duty" on 10% beneficial owners, confers on securities issuers "an enforceable legal right to expect [the fiduciary] to refrain from engaging in any short-swing trading," and "compensates them for the violation of that right by allowing them to claim any profits realized from such trading."[30] "The deprivation of this right," we concluded, "establishes Article III standing."[31]

---

[28] *Id.* at 177 (quoting *Gratz*, 187 F.2d at 49).

[29] *Id.* at 179 (alteration in original) (quoting *Gratz*, 187 F.2d at 48); *id.* at 177; *see also Gratz*, 187 F.2d at 49 ("[Section 16(b)] does indeed cover trading by those who in fact have no such [inside] information, but that is true as well of dealings between a trustee and his beneficiary: 'A trustee with power to sell trust property is under a duty not to sell to himself either at private sale or at auction, whether the property has a market price or not, and whether the trustee makes a profit thereby.'" (quoting RESTATEMENT OF TRUSTS § 170(1) cmt. b (1935))).

[30] *Donoghue*, 696 F.3d at 177-78.

[31] *Id.* at 177.

### C. *TransUnion* Did Not Abrogate *Donoghue*

The District Court determined that Section 16(b) merely protects against "speculative harm," and found that the alleged violation did not pass Article III muster in light of *TransUnion*'s holding that "risk of harm" alone does not qualify as "concrete" harm.[32] The District Court acknowledged that *Donoghue* "unequivocally" held that a violation of Section 16(b) can establish constitutional standing, but it predicted that "the Second Circuit would likely come to the same conclusion if presented with the opportunity to reconsider its holding" in *Donoghue*.[33]

Presented with the "opportunity to reconsider" our holding in *Donoghue*, we part ways with the District Court's prediction, which rested on several errors.

First, the District Court declined to follow *Donoghue* because it found that "*TransUnion* and progeny . . . cast doubt on that controlling precedent."[34] That is the standard by which *this Court* reconsiders its own precedent.[35] District Courts, by contrast, are "obliged to follow

---

[32] *Packer*, 661 F. Supp. 3d at 13-18.

[33] *Id.* at 13, 17 (hyphen omitted).

[34] *Id.* at 14.

[35] *See Medunjanin v. United States*, 99 F.4th 129, 135 (2d Cir. 2024).

our precedent, even if that precedent might be overturned in the near future."[36]

Indeed, we have cautioned District Courts against preemptively declaring that our caselaw has been abrogated by intervening Supreme Court decisions. In *United States v. Polizzi*, the District Court had concluded that intervening Supreme Court decisions had "effectively rejected" ostensibly controlling Second Circuit caselaw.[37] We repudiated the District Court's approach, labeling it "less an application of existing precedent than a prediction of what the Supreme Court will hold when it chooses to address this issue in the future."[38] As in *Polizzi*, the District Court should have applied controlling precedent—*Donoghue*—rather than try to read the Second Circuit's tea leaves.

Second, the District Court compounded the error by misreading those tea leaves. *TransUnion* requires "a close historical or common-law analogue for the[] asserted injury" to support constitutional

---

[36] *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994). In rare cases, a district court can decline to follow our precedent if it concludes that an intervening Supreme Court decision has so clearly undermined our precedent that it will almost inevitably be overruled.  *See, e.g., Wojchowski v. Daines*, 498 F.3d 99, 105–08 (2d Cir. 2007).  This is not the rare case for the reasons discussed below.

[37] *United States v. Polizzi*, 549 F. Supp. 2d 308, 438 (E.D.N.Y. 2008), *vacated and remanded sub nom. United States v. Polouizzi*, 564 F.3d 142 (2d Cir. 2009).

[38] *Polouizzi*, 564 F.3d at 160.

15

standing.[39] As *Donoghue* made clear, because Section 16(b) makes 10% beneficial owners into statutory fiduciaries, a close historical or common-law analogue to short-swing trading by a 10% beneficial owner is breach of fiduciary duty.[40] Just as a common-law fiduciary who "deals with the trust estate for his own personal profit" must account to the beneficiary "for all the gain which he has made," a statutory fiduciary who engages in short-swing trading owes its gains to the corporation under Section 16(b).[41] The deprivation of these profits inflicts an injury sufficiently concrete to confer constitutional standing.[42] Nothing in *TransUnion* undermined the analogue we identified in *Donoghue*.

What's more, Article III's historical-analogue requirement did not originate in 2021 with *TransUnion*. The Supreme Court in *TransUnion* merely elaborated on its 2016 decision in *Spokeo Inc. v. Robins*, which directed courts "to consider whether an alleged

---

[39] 594 U.S. at 424.

[40] *See* Section II.B, *ante*.

[41] *Barney v. Saunders*, 57 U.S. (16 How.) 535, 543 (1853); *see also Donoghue*, 696 F.3d at 177 (quoting *Gratz*, 187 F.2d at 49) (drawing this analogy).

[42] *See Donoghue*, 696 F.3d at 178 ("§ 16(b) . . . provid[es] the issuer, upon breach of the fiduciary duty created by that statute, with the right to any profits realized from the unfaithful insider's short-swing trading. . . . [T]he issuer's right to profits under § 16(b) derives from breach of a fiduciary duty created by the statute in favor of the issuer.").

intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."[43] And in 2018, in *Klein v. Qlik Technologies, Inc.*, we reaffirmed that *Donoghue* remained good law after *Spokeo*.[44]

So what changed between *Spokeo* and *TransUnion* to make the District Court believe that *Donoghue* had been abrogated? "[T]he lesson from *TransUnion*," the District Court wrote, "is that 'Article III standing requires a concrete injury even in the context of a statutory violation.'"[45] But this "lesson" derives from *Spokeo*, not *TransUnion*.[46] And as we noted in *Donoghue*, "it has long been recognized that a legally protected interest may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing, even though no

---

[43] 578 U.S. at 340-41; *see* Section II.A, *ante*.

[44] 906 F.3d 215, 220 (2d Cir. 2018) (citing *Spokeo*, 578 U.S. at 338, then citing *Donoghue*, 696 F.3d at 175).

[45] *Packer*, 661 F. Supp. 3d at 11 (quoting *TransUnion*, 594 U.S. at 426).

[46] *See TransUnion*, 594 U.S. at 426 ("As the Court emphasized in *Spokeo*, 'Article III standing requires a concrete injury even in the context of a statutory violation.'" (quoting *Spokeo*, 578 U.S. at 341)).

17

injury would exist without the statute."[47] The Supreme Court reaffirmed this principle in *TransUnion* itself.[48]

Next, the District Court pointed to *TransUnion*'s pronouncement that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm."[49] But the District Court was mistaken in determining that Section 16(b) protects against the risk of harm alone. Packer does not base his standing argument on a risk of harm, nor did we rely on a risk-of-harm theory to find constitutional standing in *Donoghue*.[50] The concrete injury that confers standing on Packer is, as we recognized in *Donoghue*, "the breach by a statutory insider of a fiduciary duty owed

---

[47] *Donoghue*, 696 F.3d at 175 (internal quotations and citation omitted).

[48] *TransUnion*, 594 U.S. at 425 ("Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" (quoting *Spokeo*, 578 U.S. at 341)).

[49] *Packer*, 661 F. Supp. 3d at 11 (quoting *TransUnion*, 594 U.S. at 436) (emphasis in *TransUnion*).

[50] *See* A108, 112-13 (District Court oral argument); *Packer*, 661 F. Supp. 3d at 15 n.13 ("Plaintiff . . . admitted that his theory of harm . . . does not rest on a risk of harm.").

to the issuer not to engage in and profit from any short-swing trading of its stock."[51]

Finally, the District Court noted that *TransUnion* had eliminated the distinction—previously employed by this Circuit in evaluating constitutional standing—between "substantive" and "procedural" rights.[52] But nothing in *Donoghue* turned on whether the right conferred by Section 16(b) is substantive or procedural.

In short, "because no intervening Supreme Court decision undermines the rationale relied on by the panel,"[53] *Donoghue* remains good law.

Appellees' remaining arguments attack our rationale in *Donoghue*. But "we remain bound by a prior decision of this Court until it is overruled either by this Court sitting *en banc* or by the Supreme Court, or until an intervening Supreme Court decision casts doubt on the prior ruling such that the Supreme Court's conclusion in a particular case broke the link on which we premised our prior decision or undermined an assumption of that decision."[54] Neither the

---

[51] *Donoghue*, 696 F.3d at 180.

[52] *Packer*, 661 F. Supp. 3d at 11.

[53] *Polouizzi*, 564 F.3d at 161 (emphasis omitted).

[54] *Medunjanin*, 99 F.4th at 135 (alterations adopted) (quotation marks and citations omitted).

Supreme Court nor this Court sitting *en banc* has overruled *Donoghue*, and for the reasons set forth above, *TransUnion* casts no doubt on our holding. In any event, we conclude that Appellees' remaining arguments, most of which *Donoghue* already rejected, are without merit.[55]

---

[55] Appellees contend that they cannot be considered fiduciaries because they did not exercise control over FLWS, sit on its board of directors, or trade on inside information. *See* Appellees Br. at 30, 44. In *Donoghue*, we explained that this line of argument "confuses the wrongdoing that prompted the enactment of § 16(b)—trading on inside information—with the legal right that Congress created to address that wrongdoing—a 10% beneficial owner's fiduciary duty to the issuer not to engage in *any* short-swing trading." 696 F.3d at 177; *see also id.* at 179 ("§ 16(b) . . . confer[s] on securities issuers a legal right . . . . It is the invasion of this legal right, without regard to whether the trading was based on inside information, that causes an issuer injury in fact."). Indeed, a fiduciary's duty at common law "often required more than the avoidance of actual unfair dealing." *Id.* at 177. To the extent the fiduciary duty imposed on 10% beneficial owners differs from the duty at common law, *TransUnion* does not require an "exact duplicate" for the violation of a statutory right to constitute a concrete injury. 594 U.S. at 433.

Appellees further argue that breaches of fiduciary duty do not confer constitutional standing in the absence of individual injury. *See* Appellees Br. at 32 (citing *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir. 2009)). Again, we rejected this argument in *Donoghue*, reasoning that "the fiduciary obligation created by § 16(b) is not general, but rather confers a specific right on issuers to

Appellees acknowledge that their challenge to Packer's constitutional standing requires us to hold that *Donoghue* is no longer good law.[56] We decline the invitation. Accepting as true the complaint's allegation, as we must on a motion to dismiss, that Appellees are 10% beneficial owners, Packer has established constitutional standing to bring a Section 16(b) suit against them.

## III.   CONCLUSION

To summarize:

(1) *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170 (2d Cir. 2012), which held that a violation of Section 16(b) of the Securities Exchange Act inflicts an injury that confers

---

expect their insiders not to engage in short-swing trading." 696 F.3d at 178 (distinguishing *Kendall*).

Finally, Appellees invoke *Kern County Land Co. v. Occidental Petroleum Corp.*, which adopted a "pragmatic" approach to Section 16(b) for "borderline transactions," that is, "transactions not ordinarily deemed a sale or purchase." 411 U.S. 582, 594-95 & n.26 (1973); *see* Appellees Br. at 46-48. But the question before us is whether Packer has constitutional standing, not whether the alleged transactions qualify as borderline. In any event, the "*Kern County* exception" does not apply to Appellees' alleged trades because no party avers that Appellees' shares were "sold involuntarily." *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 129 (2d Cir. 2018).

[56] Oral Arg. Audio Recording at 30:14-31:28, 38:00-38:16.

constitutional standing, remains good law.

(2) We do not suggest that Plaintiff-Appellant Brad Packer will ultimately prevail in his lawsuit. But at this stage in the litigation, he has adequately alleged constitutional standing to bring a Section 16(b) suit against Appellees.

Accordingly, we **REVERSE** the March 13, 2023 judgment of the District Court dismissing the action for lack of constitutional standing and **REMAND** for further proceedings consistent with this opinion.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

22